Filed 2/4/22  P. v. Jenkins CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>CLIFFORD JENKINS,<br><br>       Defendant and Appellant. | B312226<br><br>(Los Angeles County<br>Super. Ct. No. BA050222) |

APPEAL from an order of the Superior Court of Los Angeles County.  Juan Carlos Dominguez, Judge.  Reversed and remanded with directions.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

Clifford Jenkins appeals the summary denial of his petition for resentencing under Penal Code[1] section 1170.95. Appellant maintains that because he made a prima facie showing that he is entitled to relief under the statute, the superior court was obligated to issue an order to show cause pursuant to section 1170.95, subdivision (c), and conduct an evidentiary hearing in accordance with subdivision (d). Instead, the superior court improperly engaged in factfinding based on this court's prior opinion in the direct appeal to determine that appellant was a major participant in the underlying felonies who acted with reckless indifference to human life and was thus ineligible for resentencing as a matter of law. Respondent concedes the point. We also agree that the superior court erred to the extent it relied upon the prior appellate opinion to make its own findings of fact at the prima facie review stage under section 1170.95, subdivision (c).

The error is not harmless. Having taken judicial notice of the trial record and reviewed the jury's verdict forms and jury instructions, we conclude the record of conviction does not demonstrate appellant is ineligible for relief as a matter of law. We therefore remand the matter to the superior court for further proceedings, including the issuance of an order to show cause and an evidentiary hearing in accordance with section 1170.95, subdivision (d).[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] In remanding this matter to the superior court for proceedings in accordance with section 1170.95, subdivision (d), "[w]e express no opinion about [appellant's] ultimate entitlement

**FACTUAL AND PROCEDURAL BACKGROUND**
### A. *The murder of Randy Burge*[3]

On February 22, 1990, around 2:00 p.m., codefendant Ernest Simms approached Kevin Thomas, who was in his car stopped in traffic. Simms put a .25- or .32-caliber revolver to the back of Thomas's head and ordered him out of the car. Simms then escorted Thomas at gunpoint to a nearby residence, where they were met at the back door by appellant, who also pointed a .25- or .32-caliber revolver at Thomas's head. Appellant handcuffed Thomas and wrapped tape around his mouth before leaving the house. Appellant returned moments later holding Randy Burge—a witness to Thomas's kidnapping—at gunpoint. Simms told Burge he was " 'at the wrong place at the wrong time.'" (*Simms I*, *supra*, B074209.)

Codefendants Brian Hill and Freddie Doss then entered the house carrying guns: Hill's was a .25- or .32-caliber revolver and Doss held a .38-caliber revolver. Appellant and Simms forced Thomas to call his mother to demand a $10,000 ransom. After the call, appellant took a ring, keys, and approximately $30 in cash from Thomas. Burge began asking the men why he was being held. Simms pointed his gun at Burge and told him to shut up. But Burge persisted in asking questions and making noise until Simms shot him in the foot. (*Simms I*, *supra*, B074209.)

---

to relief following the hearing." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 983 (*Drayton*).)

[3] The statement of facts is drawn from this court's decision filed on January 11, 1996, in appellant's direct appeal from the conviction. (*People v. Ernest Simms et al.* (Jan. 11, 1996, B074209) [nonpub. opn.] (*Simms I*).)

At some point, appellant and Simms left the house to secure the ransom money while Hill and Doss remained guarding Thomas and Burge at gunpoint. Fearing he was going to be killed, Thomas threw himself through a closed glass window. He landed on his back in the driveway and the handcuffs broke. Hill and Doss fired at least eight to ten shots at Thomas as he ran down the street. Thomas ducked into a store and hid while a store employee called the police. (*Simms I*, *supra*, B074209.)

Around 9:44 p.m. police located appellant and Simms near the house where Thomas and Burge had been held. Both men fled and were captured by police a short time later. (*Simms I*, *supra*, B074209.)

That night around 9:00 p.m. a witness heard a single gunshot from Centinela Park in Inglewood, approximately 3.9 miles from the residence where Burge and Thomas had been held. The next morning a jogger discovered Burge's body facedown in the park. His hands were handcuffed behind his back and a rolled-up T-shirt was stuffed in his mouth. Burge had been fatally shot execution-style with a single round from a .38-caliber firearm, resulting in a contact wound to his head behind the ear. He had also suffered a gunshot wound to his foot from a .22-caliber handgun. The coroner estimated the time of death between 8:00 and 9:00 p.m. on February 22, 1990. (*Simms I*, *supra*, B074209.)

B. *Relevant proceedings*

Following a jury trial, appellant (along with codefendants Simms, Hill, and Doss) were convicted of the first degree murder

of Randy Burge (§ 187, subd. (a); count I), among other offenses.[4] (*Simms I, supra*, B074209.) The jury also found true two special circumstance allegations against Hill and Doss that the murder was committed during the commission of a robbery, a kidnapping, and a kidnapping for ransom. (§ 190.2, subd. (a)(17).) (*Simms I, supra*, B074209.) At sentencing, the trial court struck the special circumstance findings, stating its intent to sentence all of the defendants identically. The court sentenced all defendants to a term of 25 years to life for the first degree murder of Burge, plus a consecutive term of four years for the personal firearm use enhancement, for a principal term of 29 years to life.[5] (*Simms I, supra*, B074209.) This court affirmed

_____

[4] The defendants were also convicted of the kidnapping of Burge for robbery (§ 209, subd. (b); count II), the kidnapping of Thomas for ransom (§ 209, subd. (a); count III), conspiracy to commit the crime of kidnapping for ransom of Thomas, with true findings on five of the alleged overt acts (§§ 182/209, subd. (a); count IV), the robbery of Thomas (§ 211, subd. (a); count V), and the attempted willful, deliberate, and premeditated murder of Thomas (§§ 664/187, subd. (a); count VI). The jury found true the personal use of a firearm allegation as to all defendants on counts I through VI, and in bifurcated proceedings, the court found appellant guilty of possession of a firearm by a convicted felon (former § 12021.1) and found true three alleged prison priors. (*Simms I, supra*, B074209.)

[5] The defendants' sentences also included a consecutive subordinate term of life with the possibility of parole for the attempted murder of Thomas (count VI), and stayed sentences under section 654 of life with the possibility of parole for the two kidnapping charges and the conspiracy to commit kidnapping charge. (*Simms I, supra*, B074209.) Appellant was sentenced to

5

the judgments of conviction in an unpublished opinion filed January 11, 1996.  (*Simms I*, *supra*, B074209.)

Appellant filed a petition for resentencing under section 1170.95 on August 8, 2019.  After appointing counsel and accepting briefing from the parties, the superior court summarily denied the petition without issuing an order to show cause.

In its memorandum of decision, the superior court summarized the facts set forth in *Simms I*, noting that this court had found overwhelming evidence that appellant and his codefendants had committed willful, deliberate, and premeditated murder.  (*Simms I*, *supra*, B074209.)  Based on its review of the trial court file, the record from the direct appeal, and the prior appellate opinion, the superior court determined that appellant's conduct demonstrated he had "assumed a leadership role in the kidnapping of the two victims" including that he "was armed throughout the incident," pointed his gun at Thomas's head twice, placed duct tape over Thomas's mouth, demanded that Thomas contact his mother for the ransom money, stole a ring and $30 from Thomas, and offered Thomas $5,000 to retract his preliminary hearing testimony.  The superior court then concluded that under the circumstances of this case, appellant "could be tried and convicted of murder under a number of other theories, including . . . first degree felony murder as either a direct aider and abettor acting with the intent to kill or, as a 'major participant who acted with reckless indifference to human life'."  He therefore failed to make the requisite prima facie showing for relief under section 1170.95.

---

an additional concurrent term of two years for the felon in possession charge.  (*Simms I*, *supra*, B074209.)

6

## DISCUSSION

### The Superior Court Summarily Denied Appellant's Section 1170.95 Petition in Error

#### A. *Applicable law*

The Legislature enacted Senate Bill No. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*); *People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*).)

With one narrow exception (where the victim was a peace officer killed in the performance of duty and the defendant knew or reasonably should have known that fact (§ 1170.95, subd. (f)), Senate Bill 1437 effectively eliminates murder convictions premised on any theory of vicarious liability—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§ 189, subd. (e) [requiring that participant in specified felony during which a death occurs may be convicted of murder only if he/she was the actual killer, an aider and abettor who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life]; § 188, subd. (a)(3) [amending natural and probable consequences doctrine to require that all principals

act with express or implied malice to be convicted of murder (with the exception of felony murder under § 189, subd. (e)]; *Gentile*, *supra*, 10 Cal.5th at pp. 842–843.)

With the addition of section 1170.95, Senate Bill No. 1437 also allows a person previously convicted of murder under a felony-murder or natural and probable consequences theory to seek resentencing if he or she could no longer be convicted of murder because of the amendments to sections 188 and 189.[6] (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959, 971 (*Lewis*)); *Gentile*, *supra*, 10 Cal.5th at p. 843; *Martinez*, *supra*, 31 Cal.App.5th at pp. 722–723.)

When a petition for resentencing under section 1170.95 meets the basic requirements set forth in subdivision (b)(1) and (2), the superior court must appoint counsel for petitioner if requested (§ 1170.95, subd. (b)(3)), the prosecutor must then file a response to the petition, and the petitioner may file a reply (*id.*, subd. (c)). After the parties have had an opportunity to submit briefing, the superior court is required to "hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid.*; *Lewis*, *supra*, 11 Cal.5th at p. 960.)

In determining whether the petitioner has made a prima facie case for relief, the superior court may consider the petitioner's record of conviction. (*Lewis*, *supra*, 11 Cal.5th at

---

[6] As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), section 1170.95 now also applies to persons previously convicted of attempted murder or manslaughter under a felony-murder or natural and probable consequences theory. (§ 1170.95, subd. (a).)

pp. 970–971.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) At the prima facie review stage, the superior court properly denies a petition where the record of conviction demonstrates the petitioner is ineligible for relief as a matter of law. (*Ibid.*; see also *People v. Mancilla* (2021) 67 Cal.App.5th 854, 859, 863–864.)

However, the superior court's authority to make determinations without issuing an order to show cause and proceeding in accordance with section 1170.95, subdivision (d) is circumscribed by "readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980; *Lewis*, *supra*, 11 Cal.5th at pp. 971–972; *People v. Clayton* (2021) 66 Cal.App.5th 145, 153.) Although a prior appellate opinion is generally considered to be part of the record of conviction, our Supreme Court has cautioned that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Lewis*, at p. 972; *People v. Woodell* (1998) 17 Cal.4th 448, 454–455, 457 ["not . . . all appellate opinions" "establish" what happened before the trial court, and "[w]hether and to what extent an opinion is probative in a specific case must be decided on the facts of that case"].) Thus, in reviewing any part of the record to make its preliminary assessment regarding whether the petitioner would

9

be entitled to relief if his or her factual allegations were proved, the superior court must take petitioner's factual allegations as true and may not engage in factfinding.  (*Lewis*, at pp. 971–972; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 439–440.)

**B.** ***The record of conviction does not establish appellant's ineligibility for relief under section 1170.95 as a matter of law***

Appellant alleged facts sufficient to state a prima facie case entitling him to relief, and the superior court erred in making its own findings of fact at the prima facie review stage of the section 1170.95 proceeding without issuing an order to show cause and conducting an evidentiary hearing.  In denying the petition, the superior court relied on the prior appellate opinion's description of the offenses, the trial court file, and the record from the direct appeal to conclude that appellant is ineligible for relief as a major participant in the underlying crimes who acted with reckless indifference to human life.  However, "[t]he major participant and reckless indifference findings the trial court made based solely on the record evidence entail the weighing of evidence, drawing of inferences, and assessment of credibility that should be left to the factfinding hearing process contemplated by section 1170.95, subdivision (d)."  (*People v. Duchine* (2021) 60 Cal.App.5th 798, 816; *Drayton, supra*, 47 Cal.App.5th at p. 982.)  At the prima facie review stage of a section 1170.95 proceeding, such judicial factfinding is prohibited.

Not only did the superior court err by engaging in judicial factfinding at the prima facie stage on issues that were not conclusively resolved by the record of conviction, but the court also answered the wrong question when it decided that appellant could theoretically have been found guilty under the theory that

10

he was "a 'major participant who acted with reckless indifference to human life'" that remains valid under Senate Bill 1437. (See *Duchine*, *supra*, 60 Cal.App.5th at pp. 813 ["the third element of [former] section 1170.95, subdivision (a) does not require an absence of sufficient evidence, *on the record of conviction*, to support a hypothetical finding that the defendant is guilty of murder under a currently valid theory"], 816.) The jury in this case neither addressed nor made any finding (such as on a felony-murder special-circumstance allegation) that would have required proof of those two elements as to appellant, and the record of conviction did not otherwise establish those elements as a matter of law. (See *Duchine*, at p. 816.)

The error is not harmless because the record of conviction does not establish appellant's ineligibility for relief under section 1170.95 as a matter of law. (See §§ 189, subd. (e)(3), 190.2, subd. (d).) The jury in this case was instructed it could convict the defendants of first degree murder on the theories of willful, deliberate, premeditated murder, felony murder, or under the doctrine of natural and probable consequences. In argument to the jury the prosecutor explained that the defendants were guilty of the first degree murder of Randy Burge pursuant to any one of four different theories: (1) willful, deliberate, and premeditated murder; (2) robbery felony murder, including murder liability for an aider and abettor to the robbery and/or for a coconspirator in the robbery; (3) murder liability for an aider and abettor to a kidnapping if the murder was a natural and probable consequence of the kidnapping; and (4) murder liability for a coconspirator in the conspiracy to kidnap Thomas if a natural and probable consequence of the conspiracy was the killing of a witness.

The prosecutor emphasized that although a verdict of first degree murder had to be unanimous, unanimity as to which theory applied was not necessary for a conviction. This is correct. As our Supreme Court has explained, "premeditated murder and felony murder are not different crimes, but are instead alternate mechanisms of determining liability. Accordingly, 'as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty.' " (*People v. Scully* (2021) 11 Cal.5th 542, 598.) Here, the preprinted general verdict form by which the jury convicted appellants of first degree murder included only one of four theories of guilt (willful, deliberate, and premeditated murder), which some, all, or none of the jurors may have accepted as the basis for the conviction.

This is not a case where the jury was given several different guilty verdict forms, each stating a distinct theory of first degree murder—one theory being willful, deliberate, and premeditated murder, and others presenting the vicarious liability theories of felony murder and natural and probable consequences—that would allow us to infer the basis for the jury's guilty verdict from its choice of one verdict form over the others. Instead, the jury was given a single, general guilty verdict form for the crime of first degree murder that included one possible theory of first degree murder preprinted on it. (See § 189, subd. (a).) Under these circumstances, the inclusion of the "willful, deliberate, and premeditated" language on the verdict form does not constitute a jury finding of the specific theory underlying the verdict, nor does it preclude the possibility that the jury found the defendants guilty of first degree murder under a felony-murder or natural and probable consequence theory.

Accordingly, the jury's findings in this case do not establish as a matter of law appellant's ineligibility for relief under section 1170.95.

In sum, neither the prior appellate opinion nor the record of conviction in this case eliminates the possibility that the jury found appellant guilty of first degree murder under a felony-murder or natural and probable consequences theory. Accordingly, neither shows appellant is ineligible for relief under section 1170.95 as a matter of law.[7]

---

[7] In light of our resolution of the instant appeal under state law, appellant's constitutional claims are moot. (See *People v. Spring* (1984) 153 Cal.App.3d 1199, 1208 [appellate argument may be rendered moot if sought-after relief is granted for other reasons].)

## DISPOSITION

The postjudgment order denying Jenkin's petition for resentencing under Penal Code section 1170.95 is reversed. The matter is remanded to the superior court for the issuance of an order to show cause and further proceedings in accordance with Penal Code section 1170.95, subdivision (d)(3).

NOT TO BE PUBLISHED.

                                          LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.